UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARY ELLEN ROOTERS | § | |
| | § | |
| **Plaintiff**, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:09-cv-0225-M |
| | § | |
| STATE FARM LLOYDS | § | |
| INSURANCE COMPANY | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Pursuant to the district court's standing order of reference dated February 17, 2009 (Doc. # 5) came on to be considered Defendant's Motion for summary judgment (Docs. 34-36) filed on November 16, 2009, Defendant's motion to strike Plaintiff's summary judgment sur-replies (Doc. 51) filed on January 8, 2010, and Plaintiff's motion for leave to file a response to Defendant's motion to strike, (Doc. 55), filed on January 19, 2010.  Having considered the relevant pleadings, and for the reasons discussed below, the court finds and recommends as follows:

*Procedural History:*

State Farm filed its motion for summary judgment on November 16, 2009.  (Docs. 34-36).  Rooters filed her response on December 7, 2009.  (Docs. 37-39).  State Farm filed its reply, (Doc. 42), and its objection to Rooters' summary judgment evidence, (Doc. 43), on December 21, 2009.  Rooters filed two sur-replies on December 31, 2009, one in response to State Farm's summary judgment reply, (Doc. 46), and one in response to State Farm's objections to Rooters'

summary judgment evidence. (Doc. 47). State Farm filed a motion to strike the sur-replies on January 8, 2010. (Doc. 51). Rooters filed a motion for leave to file response to State Farm's motion to strike the sur-replies on January 19, 2010. (Doc. 55).

*Factual Background:*

Viewing the facts in the light most favorable to the non-movant, Mrs. Rooters, the events which led to this lawsuit are as follows. In early 1999, hail and rain caused water damage to the roof and interior of the building owned by the Rooters. (Pl. App. 022; Def. App. 158). An insurance policy with State Farm was held in the name of Mrs. Rooters' husband, Reverend Fred T. Rooters, and he filed a claim on or about May 4, 1999. *Id.*

On July 27, 1999, the process of repairing the roof began, and in August 1999, State Farm paid approximately $19,000 for replacement of the roof, an amount Mrs. Rooters stated was sufficient to cover the repairs. (Pl. App. 022, 027). Mrs. Rooters claimed that a check issued on August 2, 1999, in the amount of $331.00, was issued for the repair of the interior of the building, and was based on a total estimate of $1,497.05 needed for interior building repairs. *Id*. She alleged that as of 1999, State Farm was aware of mold formations in the interior of the building and failed to perform a mold assessment, pay for mold abatement, and warn the residents, which put the health of Rooters' family at risk. *Id*.

Reverend Rooters passed away on June 28, 2001, at which point Mrs. Rooters (hereinafter "Rooters") alleges that the interior of the building had developed high concentrations of Stachybotrys, or "Black Mold", and at which time State Farm still had not paid sufficient funds to repair the building's interior. *Id*. In 2002, at the request of Rooters, State Farm sent an adjuster to the premises, after which the 1999 claim was re-opened and Rooters

2

was issued a check for $4,402.42 for mold abatement. Rooters never cashed the check, and claimed that no directions were given by State Farm as to how to use the money. (Pl. App. 023). In 2003, Rooters paid for an environmental assessment of the interior of the building, which revealed high concentrations of Black Mold as well as other types of mold. *Id*. She installed a new air conditioner on the day of the environmental assessment, and awoke the next morning with her throat "closed up", her ears hurting, and her eyes burning. *Id*. She moved out in June 2003. (Pl. App. 024).

Rooters claimed she "was forced" to hire an attorney to obtain funds needed to initiate repairs to the interior of the building. (Pl. App. 024). From 2004 through 2006, Plaintiff and her counsel corresponded numerous times with State Farm. State Farm issued multiple checks; however, Rooters had difficulty cashing the checks since they were styled to Reverend Rooters and his church, the original beneficiaries of the insurance policy prior to the Reverend's passing. (Pl. App. 024-026; Def. App. 205-210). It appears to have taken Mrs. Rooters several years to sort this issue out, and a portion of the funds received from the State Farm checks that were eventually cashed was used to pay Rooters' counsel.

On October 20, 2004, Janet Morrow, a claim representative at State Farm, sent a letter to Plaintiff's counsel stating that State Farm had already paid $6,051.70 toward Mrs. Rooters' additional living expenses, that payments were made for property damage in 1999 and for mold damage in May 2002 and January 2004, and that as of October 2004, it was State Farm's understanding that Rooters still had not commenced the repairs for which State Farm had issued the checks in 2002 and 2004. (Pl. App. 040). Ms. Morrow expressed sympathy for Mrs. Rooters' extenuating circumstances, but explained that based on the type and extent of damage

3

to the Rooters' home, "a reasonable length of time to effect repairs should not exceed three to five months." (Pl. App. 040). Throughout this time period Mrs. Rooters moved several times and allegedly suffered multiple health problems. (Pl. App. 024-026).

In May 2007, Rooters contacted Mr. Troy Bell of All Phase Remodeling and Restoration to commence repair work on her home. (Pl. App. 044). The work was to be completed in two phases, due to Rooters' need to hold off on certain repairs while waiting for additional financing. *Id*. Rooters refinanced her home to make repairs necessary so that she could move back in and avoid foreclosure on her home, (Pl. App. 025), as the bank was preparing to foreclose on it due to abandonment. (Pl. App. 045).

On August 18, 2007, at Rooters' request, State Farm sent an adjuster to photograph the property, and requested an "Xactimate" estimate, which was prepared by All Phase and provided to Defendant on August 20, 2007. (Pl. App. 026). All Phase completed work on phase one, but did not begin the phase two repairs due to lack of funds. (Pl. App. 044). On December 21, 2007, Defendant issued checks in the amount of $3,594.17 for additional damages to the dwelling and $3,150.00 for loss of use. *Id*. Rooters claims that State Farm "made a GROSS ERROR" in the way it went about disbursing the funds. *Id*. In total, between 1999 and 2007, State Farm made payments of $93,154.27 on the original claim (claim number 43-M715-169) opened in 1999 by Reverend Rooters, and payments of $39,433.05 on the claim opened in 2007 (claim number 43-E742-176) by Mrs. Rooters. (Def. App. 205-210).

According to Mr. Bell of All Phase Remodeling, at some point Rooters hired other individuals to perform work listed on All Phase's phase two proposal. (Pl. App. 044). Bell was contacted by Rooters in August 2009 to complete a new "Xactimate" estimate. (Pl. App. 044). After inspecting the home, All Phase created a new estimate, and Mr. Bell also noted that some

4

of the Phase two work done by others would have to be re-addressed due to the poor quality. (Pl. App. 044). During the deposition of Troy Bell, he stated that his original contract with Ms. Rooters for all of the phase one and two work was $70,000 total, and that he was paid $50,000 for the phase one work completed. (Def. App. 247). He admitted that he prepared an "Xactimate" estimate for $96,063.13 for all of the work required, but that he never intended to charge more than $70,000 for all of the work, and that it could all have been completed in less than three months. (Def. App. 249-253).

At the request of Defendant, an environmental assessment was completed on October 15, 2009, by David A. Weeks, a Senior Environmental Engineer at Risk Management and Engineering LTD. (Def. App. 236-242). Weeks opined that the damage at the Rooters' residence was caused by one or more of the following: roof leaks, roof penetration flashing leaks, condensation on uninsulated HVAC freon pipes and air supply register boots, plumbing leaks, surface water and roof drainage, failed window seals and bathroom tile and grout, and excessive dirt and lack of climate control. (Def. App. 236-238). He opined that if the Rooters had completed the work paid for by State Farm in 1999, later mold remediation would not have been required, and that the $123,385.55 paid by State Farm for the claims between 1999 and 2009 "adequately addressed the extent of water and mold damage described by the claim file photos and reports." (Def. App. 238). He also opined that nine months was more than adequate to complete needed repairs, that the residence was never rendered uninhabitable by mold, and that Plaintiff's proffered expert, Mr. Reginald Durham, was not qualified to render expert opinions regarding mold and mold remediation, as he is not licensed in the state of Texas to do so. (Def. App. 239).

5

*Summary Judgment Standard*:

A party may move for summary judgment in the party's favor at any time. Fed. R. Civ. P. 56(b). To prevail on a motion for summary judgment, the moving party has the initial burden of showing there is no genuine issue of any material fact and judgment should be entered as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505 (1986). The materiality of facts is determined by substantive law. *Anderson*, 477 U.S. at 248. "An issue is 'material' if it involves a fact that might affect the outcome of the suit under the governing law." *Burgos v. Southwestern Bell Telephone Co.*, 20 F.3d 633, 635 (5th Cir. 1994). If the moving party presents evidence tending to show the absence of any genuine issue of fact, the opposing party must then identify specific evidence in the record which establishes the existence of one or more issues of fact, i.e. a non-movant may not merely rely on his or her pleadings. *See Anderson*, 477 U.S. at 256-57; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). In addition, neither conclusory allegations nor hearsay statements are competent evidence sufficient to defeat a motion for summary judgment. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825, 113 S. Ct. 82 (1992). In analyzing the competent evidence proffered by the parties, the facts and the inferences to be drawn are viewed in the light most favorable to the non-movants. *See Hibernia Nat'l Bank v. Carner*, 997 F.2d 94, 97 (5th Cir. 1993); *Herrera v. Millsap*, 862 F.2d 1157, 1159 (5th Cir. 1989).

*Findings and Recommendation*:

In essence, Rooters' case hinges on whether State Farm bears any responsibility for addressing mold growth caused by hail and water damage and whether State Farm bears any liability for its handling of her claims, all originally stemming from damage to Mrs. Rooters' property during a storm in 1999. As will be discussed below, State Farm has met its initial burden of presenting evidence to show the absence of any genuine issues of fact. Viewing the facts and inferences in the light most favorable to Mrs. Rooters, aside from conclusory allegations or hearsay statements in her multiple filings in response, Rooters has identified no specific evidence tending to show the existence of any outstanding issues of fact.

Defendant State Farm argues that summary judgment in its favor is appropriate for the following reasons: (A) Rooters' breach of contract claim fails because mold is not covered and she cannot otherwise prove causation or damage; (B) State Farm is not liable under any general negligence theory; (C) Rooters' common law and statutory bad faith claims fail as a matter of law and (D) fail for want of evidence; (E) there is no liability under Chapter 542; (F) there is no private cause of action under former section 21.21-2; (G) there is no competent evidence to support any personal injury claims; (H) no recovery of punitive damages for fraud, malice, or gross negligence can occur; and (I) there is no evidence to support mental anguish damages. Rooters argues that genuine issues of material fact remain, without directly responding to the specific arguments raised in State Farm's motion.

The crux of Rooters' suit is that mold growth occurred as a result of the water damage caused by hail and rain, that the mold was not properly remediated in part due to delays in getting the funds from State Farm to Rooters to initiate the needed repairs, and that the mold has thus worsened over the past decade, causing health problems and undue stress to Rooters and

prompting several moves while her house was uninhabitable due to mold. The policies at issue are State Farm HO-B Broad Form policies which contain a mold exclusion. *See, e.g., Fiess v. State Farm Lloyds*, 202 S.W.3d 744 (Tex. 2006). Rooters essentially argues that the mold damage was caused by covered perils including wind/hail and water damage, and therefore the mold exclusion should not bar her from recovering from State Farm.

Viewing the facts in the light most favorable to Rooters, hail caused damage to the Rooters' roof in early 1999, and the failure to promptly address that damage led to the formation and growth of mold. (See Pl. Br. 1-2, Pl. App. 022-026). The roof was repaired in 1999, however, the mold remained and spread. *Id*. In her deposition, Rooters argued that even if mold was not covered, State Farm created an implied coverage by issuing her checks for mold damage in 2002 and 2004, and thus owed her a duty of care in overseeing the repairs to her home. (Def. App. 168, 175). She acknowledged that no physical work to repair the house or address the mold occurred between 1999 and 2007. (Def. App. 200). Over the past decade, State Farm issued checks totaling over $123,000.00 related to the 1999 damage and subsequent mold growth. (Doc. 42, p. 6).

Breach of contract claim:

Prior to the decision of the Supreme Court of Texas in *Fiess v. State Farm Lloyds*, 202 S.W.3d 744 (Tex. 2006), there was arguably some ambiguity as to whether the HO-B policy excluded mold growth when the growth was the result of a covered peril, such as hail damage. However, the 2006 decision in *Fiess* removed any ambiguity, as it clearly stated that the ensuing loss provision contained in Section I-Exclusions, part 1(f) of the Homeowners Form B (HO-B)

8

issued by State Farm Lloyds does not provide coverage for mold contamination. *See Fiess v. State Farm Lloyds*, 472 F.3d 383 (5th Cir. 2006). Rooters has failed to present any legal authority suggesting that this express exclusion could be overcome by a showing that the loss was proximately related to a covered event. *See Justice v. State Farm Lloyds Ins. Co.*, 246 S.W.3d 762 at 764-765 (Tex. App.- Houston, 2008).[1] As stated in response to the Fifth Circuit's certified question on this issue in *Fiess*, "[t]he policy here provides that it does not cover 'loss caused by mold.' While other parts of the policy sometimes make it difficult to decipher, we cannot hold that mold damage is covered when the policy expressly says it is not." *Fiess*, 202 S.W.3d at 745. As mold was not covered by the insurance contract, Rooters cannot recover for a breach of that contract based on damages caused by mold. Moreover, Rooters has failed to present any competent evidence demonstrating that damages, beyond the $19,000 originally paid for repair of the roof, were caused by wind/hail or water damage rather than mold. "[W]hen covered and non-covered perils combine to create a loss, the insured is entitled to recover that portion of the damages caused solely by the covered peril." *Comsys Info. Tech. Servs. Inc. v. Twin City Fire Ins. Co.*, 130 S.W.3d 181, 198 (Tex. App.- Houston, 2003, no pet.); *State Farm Fire & Cas. Co. v. Rodriguez*, 88 S.W.3d 313, 320-321 (Tex. App.- San Antonio, 2002, pet. denied). Rooters has presented no competent evidence to dispute the fact that mold was not covered by her policies. Moreover, State Farm has already paid over $123,000.00 as a result of Rooters' claims, and Rooters has presented no evidence to show that her damages from covered

---

[1] In *Justice*, the Plaintiffs did not assert coverage under an "ensuing loss" clause of the policy, instead arguing that a provision of the State Farm Adjuster's Guide stated that proximate losses are covered losses. The court held that Plaintiffs' contention afforded no basis for relief, as Plaintiffs provided no legal authority to suggest such a provision could be "controlling, relevant, or even admissible concerning the meaning or scope of coverage of the policy."

perils exceed that amount. Summary judgment in favor of State Farm is appropriate.

General negligence, common law, and statutory bad faith claims:

Texas law does not recognize a cause of action for negligent claim handling, and the absence of policy coverage over a claim generally precludes liability for common law and statutory bad faith claims. See *Justice v. State Farm Lloyds Ins. Co.*, 246 S.W.3d 762, 765 (Tex. App.- Houston 2008) (citations omitted). Moreover, Rooters has presented no evidence of common law bad faith or any statutory basis for a claim of bad faith. Her general claim that State Farm violated Chapter 541 of the Texas Insurance Code, titled "Unfair methods of competition and unfair or deceptive acts or practices", is similarly unsubstantiated. Rooters contests the way State Farm handled her claim payments, in that some of the checks were made payable to the Estate of Fred Rooters, Washington Mutual Bank FA, and the General Christian Society of Dallas, Inc.; however, those were the named insureds at the time of the 1999 damage to the Rooters' residence, and State Farm therefore issued all checks under the claim associated with that policy to the named insureds.[2]

---

[2] Fred Rooters and Washington Mutual Bank FA were named on the December 18, 1998 through December 18, 1999 policy. (Def. App. 003). Fred Rooters, Washington Mutual Bank FA, and General Christian Society of Dallas, Inc. Were named on the December 2001 through December 2002 policy. (Def. App. 028). On April 30, 2002, that policy was amended to change the primary insured's name to Mary Rooters, and continued to list Washington Mutual as the mortgagee. (Def. App. 056). State Farm continued to issue checks payable to the Estate of Fred Rooters through 2007, except for a check payable to Koos & Associates, Plaintiff's counsel, for $3,719.88 on January 9, 2004, and a check payable to Mary Rooters for $6,051.70 on December 21, 2004. (Def. App. 209). Between December 21, 2007 and March 12, 2008, State Farm issued checks totaling $39,433.05 to Mary Rooters. (Def. App. 210).

Claims under Chapter 542 and former section 21.21-2 of the Texas Insurance Code:

Chapter 542 and former section 21.21-2 of the Texas Insurance Code deal with unfair claim settlement practices. An insurer cannot be held liable for a breach of its duty of good faith and fair dealing when the "insurer has denied a claim that is, in fact, not covered and has not otherwise breached the contract." *Lundstrom v. United Services Auto Ass'n-CIC*, 192 S.W.3d 78, 96 (Tex. App.- Houston, 2006) (citations omitted).[3] There is a possibility that in the course of denying a claim, an insurer may commit an act so extreme as to cause injury independent of the policy claims. *Lundstrom* at 96, *citing Betco Scaffolds Co. v. Houston United Cas. Ins. Co.*, 29 S.W.3d 341, 348 (Tex. App.- Houston, 2000). However, the evidence does not suggest that any such extreme conduct occurred in this case.

State Farm made multiple payments totaling over $100,000 over the course of a ten-year period for mold damage that was not included in the Rooters' original policy, and was expressly excluded from subsequent policies purchased during the ten-year period. While there was a delay in Ms. Rooters' receipt of some of the payments due to the checks being styled to the estate of the late Reverend Rooters and his church, State Farm should not be held at fault, as the checks were issued in the name the policy was held under. State Farm cannot be held liable for breaching a duty regarding the mold, as it owed no duty regarding the mold, and there is no evidence that State Farm acted in a manner so extreme as to cause independent injury.

---

[3] In *Lundstrom*, Plaintiff sued USAA, a homeowners insurer, over mold damage. Plaintiffs sued for breach of contract and sought to recover for bad faith, violation of the Deceptive Trade Practices Act, unfair insurance practices, and violations of the prompt payment statute. The Court of Appeals held that the homeowner's policy did not cover mold ensuing from water damage, the insurer was not liable on the extra-contractual claims, and that the claim for violating the prompt payment statute would require a showing of claim coverage.

Moreover, former Section 21.21-2 does not expressly provide for a private cause of action. *See Allstate Ins. Co. v. Watson*, 876 S.W.2d 145, 148-149 (Tex. 1994). Summary judgment is appropriate on the Chapter 542 and former section 21.21-2 claims.

Personal injury and mental anguish damages:

Rooters claimed that her entire family suffered medical problems from the mold, however, she acknowledged that she had not appointed a medical expert, nor presented competent evidence that any medical issues were directly attributable to mold, (Def. App. 178-179), or to stress resulting from her insurance claims or this lawsuit. (Def. App. 192). Rooters is the only named Plaintiff in the lawsuit, and thus cannot seek damages on behalf of her deceased husband or other family members. In addition to failing to produce any competent evidence regarding physical or mental injuries resulting from State Farm's handling of her claims, Rooters has failed to establish a causal link between her alleged injuries and State Farm. Summary judgment as to her personal injury and mental anguish claims should be granted.

Punitive damages sought for fraud, malice, or gross negligence:

Exemplary damages may be awarded only where the Plaintiff proves by clear and convincing evidence that the harm for which Plaintiff seeks recovery resulted from fraud, malice, or gross negligence. Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a). Aside from vague and conclusory assertions, Rooters has presented no evidence to support a claim for punitive damages, which are ordinarily only available in exceptional cases. *See, e.g., Universal Life Ins. Co. v. Giles*, 950 S.W.2d 48, 54 (Tex. 1997); *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10,

24 (Tex. 1994). Summary judgment is therefore appropriate on Rooters' claims for punitive damages.

**RECOMMENDATION:**

For the foregoing reasons it is recommended that Defendant's motion for summary judgment be **GRANTED** and that all other pending motions be **DENIED**, the same being moot in the event that Defendant's motion for summary judgment is granted.

Signed this 16th day of February, 2010.

_____
WM. F. SANDERSON, JR.
UNITED STATES MAGISTRATE JUDGE

NOTICE

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.